**DeConcini McDonald Yetwin & Lacy, P.C.**
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Ph: (602) 282-0500
Fax: (602) 282-0520
Lawrence D. Hirsch (AZ #004982)
 lhirsch@dmylphx.com
Jeannette bickner (AZ # 009409)
jbickner@dmylphx.com
Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | In Proceedings Under Chapter 13 |
| JOHN PRESTON SMITH, | Case No.2:09-bk-23113-RJH |
| Debtor, | DEBTOR'S RESPONSE MEMORANDUM IN SUPPORT OF CONFIRMATION OVER OBJECTION OF SECURED CREDITORS CHASE HOME FINANCE LLC AND AURORA LOAN SERVICES LLC |

Debtor, John Preston Smith, ("Debtor") by and through undersigned counsel, hereby submits his Memorandum in support of his Chapter 13 Plan treatment of Chase Home Finance LLC ("Chase") and Aurora Loan Services LLC ("Aurora") and requests this Court enter an Order Confirming Debtor's Chapter 13 Plan over the objections of Chase and Aurora. In support of this request, Debtor states as follows:

**STATEMENT OF FACTS**

1. Debtor filed his Chapter 13 petition on September 17, 2009 and filed his Chapter 13 plan on October 22, 2009.

2. Creditor Chase filed a Memorandum on July 29, 2010 arguing that Debtor's plan should not be confirmed because balloon payments are prohibited under § 1325(a)(5)(B)(iii)(I) on the Bankruptcy Code.

3. Creditor Aurora filed an Objection to Confirmation and Memorandum on July 23, 2010 arguing that Debtor's plan violates the "equal payments" provision of § 1325(a)(5)(B)(iii)(I) and the proposed rate of interest to be paid to Aurora was not correctly calculated.

4. Debtor's position is that his plan does not violate the provision of § 1325(a)(5)(B)(iii)(I) regarding equal monthly payments; that balloon payments are not prohibited by this section; and that the interest rate proposed to be paid to creditors through his plan is a market rate.

**LEGAL ARGUMENT**

**A. BALLOON PAYMENTS ARE NOT PER SE PROHIBITED IN A CHAPTER 13 PLAN**

Chapter 13 affords individuals the ability to consolidate their debts and the right to decelerate a mortgage default and cure arrearage owed over time, and where appropriate, "cram down" a property to fair market value. It gives debtors the ability to keep their real property and avert foreclosure. In order to comply with Bankruptcy Code § 1322 (b) and the post-BAPCPA language of §1325(a) (5)(B), Chapter 13 Debtors holding a mortgage must often still rely on a balloon payment sometime during the course of the Chapter 13 plan to ensure the creditor is paid in full over the life of the plan. Neither 9th Circuit case law nor the Bankruptcy Code expressly prohibits balloon payments in a Chapter 13 plan.

Prior to BAPCPA, the question of whether a Chapter 13 balloon payment plan could be confirmed focused on feasibility. Feasibility was and still is determined by a number of factors which address the probable success of a balloon payment plan such as: the equity in the property at the time of filing; the debtor's future earning capacity and disposable income; whether the plan provides for interest payments to the secured creditor; and most importantly, whether the debt is substantially reduced and the debtor able to make the balloon payment through refinance of the property. See *In re Wagner*, 259 B.R. 694, 701 (B.A.P. 8th Cir. 2001); *In re Fantasia*, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997).

These factors address the likelihood that a balloon payment plan will succeed and require debtors to demonstrate that they are "able to make all payments under the plan and to comply

with the plan", §1325(a)(6). Feasibility is still a necessary component and logically should still be the primary consideration since if a plan is not feasible, it undoubtedly will not succeed. A balloon payment plan may be more favorable to a secured creditor than an alternative treatment permitted under the Code, particularly when it results in the creditor being paid sooner, rather than later. *See In re Schultz,* 363 B.R. 906 (Bankr. E.D. Wis. Jan. 12, 2007). Although in the instant case Chase and Aurora have objected to their proposed plan treatment, it is interesting to note that by the terms of the Debtor's plan, as in *Schultz*, both creditors will receive full payment sooner, rather than later.

The post-BAPCPA changes to 1325(a) (5) (B) (iii) were intended to remedy the abuse of balloon payment plans as applied to car creditors, not mortgage lenders. Section 309(c) of BAPCPA, [adding section 1325(a) (5) (B) (iii) (I) ] is entitled "ADEQUATE PROTECTION OF LESSORS AND PURCHASE MONEY SECURED CREDITORS." Additionally, Section 309 deals primarily with personal property and the language of 1325(a) (5) (B) (iii) makes sense in the context of personal property. Creditors with a secured claim in a rapidly depreciating asset such a motor vehicle were often forced to wait in line behind other claimants with higher priority, such as administrative claims, and payments of arrearages on mortgages or lease. Thus the creditor's claim was essentially not provided for in a realistic manner by a balloon payment plan and balloon payment plans were viewed as abusive and not in the best interest of creditors. Hence 1325(a) (5) (B) (iii) was added in 2005. In the case of a motor vehicle, balloon payments do maximize the risk to the creditor that a debtor will not perform and the creditor will therefore not retain the value of its secured lien as required by 1325(a) (5) (B)(i) and (ii). Full payment of a five year auto loan can realistically be accomplished without a balloon payment, *See, e.g. In re Sardi*, 340 B.R. 790 (S.D. Tex. 2006); Full payment of a mortgage loan coming due years after the end of the plan in most cases cannot.

Cases cited by Chase in its memorandum do not counter this argument. In *In re Lemieux,* 347 B.R. 460 (Bankr. D. Mass. 2006) the Court disallowed a balloon payment because the

objecting creditor's claim came due in full several months into the plan and the plan did not provide for distributions in equal monthly amounts. In *In re Wagner,* 342 B.R. 766 (Bankr. E.D. Tenn. 2006) the court, quoting *Sardi,* required equal monthly payments until the lien was satisfied: ("The Court understands [§ 1325(a)(5)(B)(iii)(I)] to require payments to be equal once they begin, and to continue to be equal until they cease.") 342 B.R. at 772. Wagner involved a residential mortgage where the Court interpreted § 1325(a) (5)(B)(iii)(I) as prohibiting a balloon payment, yet did not discuss how that prohibition conflicted with § 1322. Pursuant to 11 U.S.C. § 1322(b)(5), a chapter 13 plan may provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due." See Note 5 at page 773.

Chase and Aurora both cite *In re Enwally,* 368 F.3d 1165, 1172 (9th Cir. 2004) correctly for the holding that a Debtor may not modify a secured claim *and* repay it over a period longer that the maximum five year Chapter 13 plan. *In re Enwally,* 368 F.3d 1165, 1172 (9th Cir. 2004). In *Enwally*, the debtors sought not only to reduce the creditor's lien down to the fair market value of the secured claim pursuant to §506(a), but also to modify payments beyond the life of the plan pursuant to the cure and maintain provision of §1322 (b) (5). The Court of Appeals, citing the US Supreme Court decision in *Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 113 s.Ct.2106, 124 L.Ed.2d 228 (1983), agreed with the District Court's reasoning that these two Code sections could not be combined to permit both bifurcation of the loan and extended repayment of the secured claim beyond the life of the plan. That is not the plan proposed by the Debtor in the instant case.

**B.     DEBTOR'S PLAN DOES NOT VIOLATE THE "EQUAL MONTHLY AMOUNTS" PROVISION OF 11 U.S.C. §1325(a)(5)(B)(iii)(1).**

Post-BAPCPA cases have focused on the meaning of the "equal monthly amounts" provision added to § 1325. Under Section 1325 the court "shall" confirm a chapter 13 plan if certain requirements are met. Debtors have three options for dealing with secured claims under

4

§1325 (a)(5). They can hope that the creditor accepts the plan under § 1325(a)(5)(A); surrender the property to the creditor under Section § 1325(a)(5)(C); or provide for treatment of a secured claim in accordance with section 1325(a)(5)(B).

The pertinent language of 1325(a) (5) (B) (iii) states that:

*if*

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in <u>*equal monthly amounts*</u>, and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide the holder of such claim adequate protection during the period of the plan.

(Emphasis added)

Under the new language of 1325(a)(5)(B)(iii)(I), *if* a plan proposes periodic payments, those payments must be in "equal monthly amounts". However, this section does not make a distinction between real and personal property, it only references "property to be distributed pursuant to this section". Under 1325(a)(5)(B)(iii)(II), the reference is specific to *personal property* and requires the payment amount of the claim to be sufficient to adequately protect the creditor's interest in that *personal property*. (Emphasis added). Logically, 1325(a)(5)(B)(iii) makes sense only when applied to personal property such as motor vehicles, not real property mortgages. Even courts that have applied 1325(a)(5)(B)(iii)(I) to real property have been inconsistent in their interpretations.

Notably, section 1325(a)(5)(B)(iii)(I) does not mandate periodic payments. It merely states that "if" periodic payments are provided for in the plan, they must be in equal monthly amounts. It would appear then that the new language does not preclude a plan providing for a single lump sum payment to a creditor. While no court has addressed this issue directly in a published opinion, the *Lemieux* court did not rule out such a provision. The *Schultz* court also did not rule directly on the propriety of a single payment plan. *See also In re Hill,* 2007 WL 499622, *5 (Bankr. M.D.N.C. Feb 12, 2007); *In re Blevins*, 2006 WL 2724153 (Bankr. E.D. Cal. Sept. 21, 2006)(equal monthly payments not required to be made over the life of the plan). In one un-reported case, the Court found that a single payment distribution to a mortgage creditor with

5

adequate protection payments to the Trustee was feasible and permissible under 1325(a)(5)(B)(iii)(I), *In re Crickmore,* Case No. 07-01350-5-ATS (Bankr. E.D.N.C., August 29, 2007) In *Crickmore*, *supra*, the Court considered "an interesting alternative approach" presented by the debtor's counsel in *In re Porter*, 370 B.R. 891 (Bankr. M.D. Pa., June 15, 2007), where a mortgage claim modified under Section 1322(c)(2) complied with "the literal requirements" of Section 1325(a)(5)(B)(iii)(I). In *Porter*, the proposed plan provided that the debtor would make interest-only payments during the plan directly to the Trustee, who would defer distribution to the creditor until the end of the plan, at which point the debtor would either sell the residence or refinance the mortgage loan; the creditor could waive the requirements of 1325(a)(B)(iii) and receive interest-only payments from the Trustee; and the dismissal of the case would result in release of the fund held by the Trustee to the secured mortgage creditor, instead of returned to the debtor. The Court also required a hearing to address feasibility concerns that might bar confirmation. After such a hearing the Court did confirm the plan.

Although not applicable in the instant case, it is worth noting that the "equal monthly amounts" requirement does not make sense in cases where the loan is an adjustable rate mortgage (ARM) or where the terms adjust for changes in escrowed amounts for taxes and insurance. In such cases it is impossible to provide 'equal monthly amounts" over the life of the plane since ARM's adjust every 3-5 years and in the majority of residential mortgage loans escrow payment amounts are analyzed and adjusted annually. A myopic view of "equal monthly amounts" would require all Chapter 13 plans to be "flat line" plans. That view does not make sense in light of how Chapter 13 plans actually work. The Bankruptcy Code allows both "step up " plans and moratoriums in Chapter 13, to allow for the myriad of circumstances that face individual debtors, circumstances that often forced the bankruptcy in the first place. Fluctuation in mortgage payments required by the underlying contract may not be a problem if §1322(b)(5) permits the debtor to cure and maintain payments independently of the requirements of §1325(a)(5). However, if courts find that §1325(a)(5)(B)(iii)(I) is applicable to cure and

maintenance payments under §1322(b)(5), it would difficult, if not impossible, for debtors to propose a plan that satisfied the requirements of §§1322(b) and 1325(a)(5).

Some courts have held that Section 1325(a)(b)(B)(iii) requires only that the debtor make equal monthly payments to the plan, not to a particular creditor. The Chapter 13 Trustee is not obligated to disburse equal monthly payments to pay secured claims because the Trustee has a duty to pay priority claims. See, e.g., In re Erwin, 376 B.R. 897 (Bankr. C.D. Ill. 2007); *In re Marks*, 394 B.R. 198 (Bankr. N.D. Ill. 2008). This was implicitly recognized in *In re Davis,* 343 B.R. 326 (Bankr. M.D. Fla. 2006) where the Court addressed the interplay of §§ 1322(b)(5) and 1325(a)(5)(B)(iii)(I) and held that the latter section was inapplicable and equal payments not required for cure of long-term obligations. Chase and Aurora both cite *In re Hamilton*, 401 B.R. 539, (1st Cir. B.A.P., March 6, 2009 ) as disapproving the *Davis* decision and thus prohibiting balloon payments under § 1325(a)(5)(B)(iii)(I). However, *Hamilton* was not a cure and maintain case so §1322(b)(5) did not come into play.

**C.    THE INTEREST RATE PROPOSED IN DEBTOR'S PLAN IS A MARKET RATE AND THEREFORE COMPLIES WITH THE "PRIME PLUS FORMULA.**

*Till v SXCS Credit Corp*, 541 U.S. 465 (2004) provides the formula used to calculate a proper rate of interest that a debtor should pay on a cram down secured claim. Aurora correctly points out that the "prime plus" formula begins with a low estimate and adjusts upward. If the low estimate is based on a lender's prime rate of interest, the adjustment will be upward for points associated with the loan. The "prime rate" of interest regularly published in the Wall Street Journal (WSJ) has consistently been 3.25 for at least the past year. *See e.g.* www.bankrate.com. Lending institutions in Arizona look to the WSJ prime rate in establishing their own institutional rates for non-adjustable loans. In the present case, the Debtor proposes to pay both Aurora and Chase an interest rate of 5% over the term of the plan. In the current real estate market, home loan rates vary between 3.60 and 4.60, www.bankrate.com. The rate proposed by Debtor is adjusted upward one and three quarters of a point and is higher than the

7

average home loan rate. The Debtor's proposed rate is therefore consistent with the "prime plus formula.

## CONCLUSION

The § 1325(a)(5)(B)(iii) amendments to the Code as implemented by BAPCPA should not be construed in such a manner as to produce an absurd result. Although there is scant legislative history to clarify whether equal monthly payments applies to claims secured by real property, the pre-BAPCPA practices that were seen as abusive and that 1325(a)(5)(B)(iii) was intended to rectify, related solely to car creditors, not mortgage lenders.

Instead of an outright ban on all balloon payment plans, the Court should continue to focus on feasibility. For instance, in *Crickmore,* the Court heard evidence from an experienced mortgage broker that a Chapter 13 debtor could not even qualify for a refinanced mortgage until the debtor made at least twelve timely plan payments and direct mortgage payments. A five year plan term gives Debtor time to repair and re-establish credit and move toward end goal of paying off loan with balloon payment, sale or refinance of property. The intent of a Chapter 13 reorganization is to gives Debtor ability to realistically consolidate and restructure debt and the primary focus of the Court should be on the ability of the debtor to do so given the facts of each particular case. The State of Arizona has been hit particularly hard hit by recession-drop in real estate values leading to foreclosures, short sales, loss of jobs and high unemployment. If at the end of a Chapter 13 plan, a Debtor not in position at end of plan to pay off with balloon or refinance, the Debtor can sell or surrender the property or lender can foreclose.

WHEREFORE, Debtor respectfully requests the Court enter an Order:

A. Denying Chase's objection to confirmation of the Debtor's Plan.

B. Denying Aurora's objection to confirmation of the Debtor's Plan.

C. Confirming Debtor's Plan in accordance with a Stipulated Order of Confirmation

D. Granting such other and further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 6th day of August, 2010.

DECONCINI MCDONALD YETWIN & LACY, P.C.
/s/ Lawrence D. Hirsch
Lawrence D. Hirsch
Jeannette Bickner
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Attorneys for Debtors

Original electronically filed
 with the U.S. Bankruptcy Court
 and copies mailed
the 6th day of August, 2010 to:

Mark S. Bosco
Leonard J. McDonald
Kevin P. Nelson
Third Floor Camelback Esplanade II
2525 East Camelback road
phoenix, AZ 85015-4237
Attorneys for Chase Home Finance LLC

Brian A. Paino
Kyle J. Shelton
Pite Duncan LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Attorneys for Aurora Loan Services LLC

Russell A. Brown
Chapter 13 Trustee
3838 N. Central ave., Ste 800
Phoenix, AZ 85012-1965

Office of the United States Trustee
230 N. First Avenue, Ste. 204
Phoenix, AZ 85003

By: /s/ Linda Miernik
Legal Assistant to Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Phone: 602-282-0473
Fax:    602-282-0520